**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ZIA HOSPICE, INC.,

    Plaintiff,

v.                                            CV 09-0055 CG/LFG
                                                  CV 09-1108 CG/ACT

KATHLEEN SEBELIUS,
Secretary of the United States
Department of Health and Human Services,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on cross Motions for Summary Judgment (Docs. 48, 51, 56, 57, 60, 62.) The Court has considered the motions, their supplements, the parties' oral arguments, the administrative records in both cases, and the relevant law. The Court **FINDS** that PRRB case no. 09-1929 and CV 09-1108 are comprehensive of and include all of the matters in PRRB case no. 09-0220 and CV 09-0055, and therefore, the timeliness question of the appeal in PRRB case no. 09-0220 is no longer at issue. The Court, therefore, will (1) **DENY** both parties' Motions for Summary Judgment (Docs. 48, 51) in CV 09-0055 and (2) reserve judgment at this time on all of the substantive issues related to the appeal of PRRB Case No. 09-1929 in CV 09-1108 and its entire repayment demand of $1,625,142.

## BACKGROUND

In the two cases before the Court, Plaintiff Zia has appealed two administrative decisions. In each, Zia challenges the validity of 42 C.F.R. § 418.309(b)(1), the "Hospice

Cap Regulation," on the grounds that it does not comply with its parent statute 42 U.S.C. § 4395f(i)(2)(C).[1] Defendant Sebelius, Secretary of the Department of Health and Human Services (HHS) raises numerous procedural issues and argues that the regulation is valid.

## HHS and Hospice Services

Medicare is a federally funded health insurance program for the aged and disabled. 42 U.S.C. §§ 1935–1935hhh.  Hospice providers who contract with Medicare, which is run by HHS, receive reimbursements for providing hospice services to Medicare beneficiaries. 42 U.S.C. § 1395g.  Those reimbursements, however, are subject to a complex web of rules.  42 U.S.C. § 1395f; 42 C.F.R. §§ 405–426.  At issue here is the Hospice Cap Regulation, which prescribes a method of computing the maximum amount that a hospice provider may be reimbursed.  42 C.F.R. § 418.309(b)(1).  The cap, however, is often calculated after the hospice provider has received some reimbursement, so the cap—when finally applied—determines the amount that the hospice must repay to HHS.  *See* 42 C.F.R. § 405.371 (procedures for addressing overpayments to providers).

HHS contracts with fiscal intermediaries to process the reimbursements and repayments.  *See* 42 C.F.R. §§ 405.1803–1877.  Hospices submit annual cost reports to the intermediaries, and the intermediaries then issue Notices of Program Reimbursements (NPR) detailing the calculations of the reimbursements and any repayment demands for overpayments.  *Id.*  The NPRs can be appealed to the Provider Reimbursement Review Board (PRRB), then to the Administrator, and finally to the federal courts.  *Id.*; 42 U.S.C. § 1395oo.  In some situations, if the PRRB determines that it is without authority to decide

---

[1] Medicare Act § 1814(i)(2)(C).

a question of law, it can grant expedited judicial review (EJR) of the issue.  42 U.S.C. § 1395oo.

## HHS and Zia Hospice

Zia provides hospice services for persons covered by Medicare.  (Pl.'s Mot. Summ. J., Doc. 49 at 2.)  On December 5, 2007, HHS made an initial repayment demand of Zia pursuant to the hospice cap for Fiscal Year (FY) 2006.  From that date, Zia had 180 days, or until June 2, 2008, to appeal that repayment demand.  *See* 42 U.S.C. § 1395oo(a)(3).  On March 11, 2008, Zia's owner and operator suffered a heart attack for which she was hospitalized until March 20, 2008.  It is unclear precisely when the owner recovered and returned to her duties at Zia, but she reports that in September of 2008, she learned of a successful challenge to the hospice cap regulation in *Los Angeles Haven Hospice, Inc. v. Leavitt*, No. 08-CV-4469-GW-RZ (C.D. Cal. July 13, 2009).  (Pl.'s Mot. Summ. J., Doc. 49 at 7.)  On October 31, 2008,[2] Zia appealed the FY '06 demand on the grounds that the hospice cap regulation was invalid and requested a good-cause waiver for its late appeal based on its owner's health problems and the resignation of its interim director.  (R. in 09-0220 at 29–58.)  This appeal is embodied in PRRB case no. 09-0220 and CV 09-0055.  On November 20, 2008[3] in PRRB case no. 09-0220, the PRRB issued its decision denying the good-cause waiver and dismissing the appeal as untimely.  (R. in 09-0220 at 4–5.)

---

[2] Zia reports that it appealed on October 31, 2008 (Pl.'s Mot. Summ. J., Doc. 49 at 8), and HHS reports that it received the appeal on November 3, 2008 (Def.'s Resp., Doc. 56 at 3).

[3] Zia reports that it received the PRRB's decision on November 24, 2008 (Pl.s' Mot. Summ. J., Doc. 49 at 8), and HHS reports that it issued the decision on November 20, 2008 (Def.'s Resp., Doc. 56 at 3).

On May 13, 2009, HHS reopened the repayment demand for FY '06 in order to reconsider and recalculate Zia's repayment amount according to the hospice cap. (Pl.'s Mot. Summ. J., Ex. D, Doc. 49-5 at 1.) "We have completed a *revised* review of the hospice cap amount for your agency for [FY '06]. As a result of this review, Medicare payments to your agency have exceeded the cap amount by $1,625,142." *Id.* (emphasis in original). After revisiting the hospice cap regulation and its application to Zia for FY '06, HHS determined that Zia's overpayment had actually been $1,625,142. *Id.*

It is undisputed that Zia timely appealed the revised repayment demand for FY '06 on the grounds that the hospice cap regulation is invalid. (R. in PRRB case no. 09-1292 at 85–86.) That case is embodied in PRRB case no. 09-1929 and CV 09-1108. The PRRB determined that it did not have jurisdiction to determine the validity of the hospice cap regulation and, therefore, granted EJR. *Id.*

## STANDARDS OF REVIEW

### Summary Judgment under FED. R. CIV. P. 56

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Fuerschbach v. Sw. Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006) (quoting RULE 56(c)). "[I]t is important to note that cross-motions for summary judgment do not automatically empower the court to dispense with the determination [of] whether questions of material fact exist. They require no less careful

scrutiny than an individual motion. [The court] must be convinced in all instances that the issues before [it] may be resolved as a matter of law." *Mo. Pac. R.R. Co. v. Kan. Gas & Elec. Co.*, 862 F.2d 796, 799 (10th Cir. 1988) (internal quotations and citation omitted). Furthermore, when dealing with cross-motions for summary judgment, the court must analyze each motion individually and on its own merits. *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir.1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."). Motions for summary judgment are proper in federal court review of Medicare proceedings. HARVEY L. MCCORMICK, MEDICARE AND MEDICAID CLAIMS AND PROCEDURES § 19:6 (Thomson Reuters, 4th ed.) (2009).

**Review under the Administrative Procedures Act**

Federal district courts have jurisdiction to review "any final decision of the [PRRB] . . . by a civil action commenced within 60 days." 42 U.S.C. §1395oo(f)(1). Review of the Secretary's underlying decision is governed by 42 U.S.C. § 1395oo(f)(1), which incorporates the standard of review of the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. Under the APA, a reviewing court must affirm the agency's decision unless the court determines that the decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law," 5 U.S.C. § 706(2)(A), *St. Mark's Charities Liquidating Trust v. Shalala*, 141 F.3d 978, 980 (10th Cir.1998), or was "unsupported by substantial evidence," 5 U.S.C. § 706(2)(E), *Pennaco Energy, Inc. v. U.S. Dep't of the Interior*, 377 F.3d 1147, 1156 (10th Cir.2004). The arbitrary-and-capricious standard of review has been equated to the substantial evidence test. *Nw. Pipeline Corp. v. Fed. Energy Regulatory Comm'n*, 61 F.3d 1479, 1485 (10th Cir. 1995). Deference is especially

warranted for the Secretary's interpretation of complex and highly technical regulatory programs such as Medicare. *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

## LEGAL ANALYSIS

The motions for summary judgment at bar turn on timing. When CV 09-0055 was initially filed on January 22, 2009, its posture was different than it is now. HHS's revised payment demand of May 13, 2009 changed the jurisdictional position of the case.

### PRRB Case No. 09-0220

The Secretary argues that the Court does not have jurisdiction to hear Zia's appeal of PRRB case no. 09-0220 because Zia failed to exhaust its administrative remedies, a prerequisite to judicial review. (Def.'s Mot. Summ. J., Doc. 52 at 10–16.) Zia, on the other hand, argues both that the agency applied the wrong good-cause regulation to its appeal and, alternatively, that the agency's decision to deny its good-cause waiver was arbitrary and capricious. (Pl.'s Mot. Summ. J., Doc. 49 at 14–15.)

The District Court has jurisdiction to review PRRB determinations that an agency appeal was untimely. *High Country Home Health, Inc. v. Thompson*, 359 F.3d 1307, 1310 (10th Cir. 2004). Generally, the PRRB may not apply regulations to services "furnished before the effective date [of the regulation]." 42 U.S.C. § 1395hh(e) (2003) ("A substantive change in regulations . . . under this subchapter[4] shall not be applied (by extrapolation or otherwise) retroactively."); *see Bowen v. Georgetown University Hospital*, 488 U.S. 204, 215 (1988) (holding that HHS was "without authority" to promulgate a retroactive cost-limit rule). If the PRRB impermissibly applies a regulation retroactively, courts typically will

---

[4] Subchapter XVIII, "Health Insurance for the Aged and Disabled," of the Social Security Act.

remand the case to allow the agency an opportunity to correct its error.  *See INS v. Ventura*, 537 U.S. 12, 16 (2002) ("[T]he proper course, except in rare circumstances, is to remand to the agency . . . ."); *see generally* 5 U.S.C. § 706(2)(D) (courts should set aside agency decisions that are "without observance of procedure as required by law").  If, however, remand would be futile, courts need not do so.  *UPMC-Braddock Hosp. v. Sebelius*, 592 F.3d 427, 439 (3d Cir. 2010) (declining the normal course of remand "to the agency for it to apply the correct law to the facts, [where] there are no further facts to be found" because the facts are not in dispute.); *Fogg v. Ashcroft*, 254 F.3d 103, 111–12 (D.C. Cir. 2001) ("In the face of such legal error, we would normally remand . . . to the agency, but we do not do so when . . . remand would be futile."); *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1080 (9th Cir. 2007) (remand may not be necessary where the record is complete and no further agency expertise is required).

    Here, the PRRB retroactively applied 42 C.F.R. § 405.1836 (2008) in evaluating Zia's request for a good-waiver of its late appeal.  The parties agree that § 405.1836 did not become effective until August 21, 2008.  (Pl.'s Mot. Summ. J., Doc. 49 at 14; Def.'s Resp., Doc. 56 at 10.)  The services at issue in the appeal, however, were rendered prior to August 21, 2008.  (Pl.'s Mot. Summ. J., Ex. H, Doc. 49-9 at 1 (services at issue were provided during FY '06).)  Since there is no dispute that the services at issue had not been rendered when the regulation became effective, as a matter of law, the PRRB impermissibly applied § 405.1836 retroactively.  Normally, the Court would remand the case to the PRRB for further proceedings under the applicable regulation. For two reasons, however, remand is not appropriate here.  First, neither party requests remand.  (Tr. Mot. Hr'g, Doc. 89 at 5:7–9, 38:17–39:4.)  Second and most importantly, for reasons explored

below, the timeliness of the appeal of PRRB case no. 09-0220 is no longer at issue. Remand of PRRB case no. 09-0220, therefore, is unnecessary, and the Court will not order it.

### PRRB Case No. 09-1929

If the agency had never revised its hospice-cap-repayment demand, timeliness would be the primary issue. HHS, however, did revise its hospice-cap-repayment demand and, thereby, triggered further arguments. Zia argues that the revised repayment demand opened a new 180-day appeal window for the entire revised repayment-demand amount. (Pl.'s Mot. Summ. J., Doc. 49 at 10–11; Pl.'s Rep., Doc. 62 at 5.) HHS asserts that any appeal rights triggered by the revised demand were "limited to the amount in controversy specific to this new demand . . . . [and to] the limited claims identified under the revision." (Def.'s Rep., Doc. 60 at 3–4.) The Court, therefore, must first determine the extent of the appeal rights attached to the revised repayment demand.

After an initial repayment-demand determination, a fiscal intermediary may reopen and revise its determination within three years of the original determination. 42 C.F.R. § 405.1885(b).[5] When an intermediary reopens and revises a determination, "the revision must be considered a separate and distinct determination" from the original. 42 C.F.R. § 1889(a).[6] A provider may appeal the revised demand, but the appeal must be

---

[5] Although there were other changes among the 2005–08 versions—which cover the significant dates at issue: 2005–06, when the services at issue were rendered; 2007, when the original repayment demand was sent on December 5, 2007; and 2008, when the revised repayment demand was sent on May 13, 2009—the three-year deadline remains the same.

[6] The 2008 version of the regulation is somewhat more specific than the 2005–07 versions, but all require the revision to be considered "a separate and distinct determination," which is the relevant clause here. *Compare* 42 C.F.R. § 405.1889 (2005), (2006) and (2007) *with* 42 C.F.R. § 405.1889 (2008).

"issue-specific." *Anaheim Mem'l Hosp. v. Shalala*, 130 F.3d 845, 851 (9th Cir. 1997). That is, a provider may appeal only those items that were "reconsidered" in the revised demand. *French Hosp. Med. Ctr.*, 89 F.3d 1411, 1420 (9th Cir. 1996); *see HCA Health Servs. of Okla.*, 27 F.3d 614, 615 (D.C. Cir. 1994) ("[A] provider's appeal . . . is limited to the specific issues *revisited* on reopening . . . ." (emphasis added)); *Edgewater Hosp. v. Bowen*, 857 F.2d 1123, 1135 (7th Cir. 1989) (holding that appeal rights attach to all items "reviewed" by the intermediary). Where an item is not only reconsidered, but also adjusted, it may be necessary to concomitantly reapply certain items in order to effectuate the targeted adjustment. In such a situation, the concomitantly reapplied item does not trigger appeal rights because it was not reconsidered or revisited itself but only incidentally reapplied. *See Anaheim* at 851–52 ("[A] new decision about how to apply (or not to apply) [an item]" is not the same as an alteration of the item even though the item is consequently reapplied, and therefore, appeal rights do not attach to the item itself.).

To illustrate, in *Edgewater*, the Seventh Circuit held that appeal rights attached to any items that were *reviewed* by the intermediary regardless of whether they ended up being *changed* in the revised demand. 857 F.2d at 1135. "[A]lteration is not a necessary component of a revision or a review." *Id.* The original repayment demand in *Edgewater* had specifically disallowed four items. *Id.* at 1126. The provider timely requested that the intermediary reconsider the four disallowed items. *Id.* Consequently, the intermediary reconsidered the four items and advised the provider that it would adjust one item but not the three others. *Id.* The intermediary then issued its revised demand reflecting the one adjustment. *Id.* The provider appealed to the PRRB regarding two of the three denied items. *Id.* The PRRB rejected the appeal on the grounds that it lacked jurisdiction because

the appeal was not submitted within 180 days of the *original* demand. *Id.* That is, the PRRB held that the provider's 180-day time limit to appeal began with the *original* demand rather than the revised demand because the two appealed items were not subjects of the *revised* demand. *See id.* The Seventh Circuit held that the two appealed items were, in fact, subjects of the revised demand because "the reopening was a reconsideration of all cost items challenged by the provider." *Id.* at 1137. The test applied by the *Edgewater* court was not whether the items ended up being *changed* in the revised demand but, rather, whether they had been *reconsidered*. *Id.* at 1135.

Similarly, the D.C. Circuit held that a provider's appeal of a revised repayment demand "is limited to the specific issues *revisited* on reopening and may not extend further to all determinations underlying the original [demand]." *HCA*, 27 F.3d at 615 (emphasis added). In *HCA*, after a revised demand had been issued addressing five specific cost items, the provider appealed the five items as well as a sixth that had not been addressed in the revised demand. *Id.* at 616. The court held that the sixth item, which had not been addressed since the original demand, could have been appealed only within 180 days after the *original* demand.[7]

Furthermore, in a pair of cases, the Ninth Circuit held that appeal rights attach only to those discrete components of an aggregate item[8] that are reconsidered in a revised

---

[7] Unlike the cost items in *Edgewater*—which were revisited but not adjusted—the cost items in *HCA* were both revisited and adjusted. *Compare Edgewater*, 857 F.2d at 1135 *with HCA*, 27 F.3d at 616. The court in *HCA*, therefore, declined to decide whether a cost item must be revisited *and* altered to trigger appeal rights or whether reconsideration alone sufficed. *HCA*, 27 F.3d at 621.

[8] The aggregate item in *French* and *Anaheim* was the Routine Cost Limit ("RCL"), "a schedule of cost limits applied to the various categories of costs a provider . . . incurs. Numerous factors go into computing the RCL, including geographic variations in wages, inflation, the beginning date of a hospital's cost reporting period, and so on." *Anaheim*, 130 F.3d at 851; *French*, 89 F.3d at 1413.

10

repayment demand and not to other components or to the aggregate itself. *French*, 89 F.3d at 1416; *Anaheim*, 130 F.3d at 853. In *French*, the Ninth Circuit explicitly adopted the Seventh Circuit's approach in *Edgewater*, which "allowed the PRRB to review all matters the fiscal intermediary had *reconsidered* upon reopening the cost report," not just those items that were *adjusted*. 89 F.3d at 1420 (emphasis in original). The provider in *French* essentially argued that revisiting any one component of the aggregate item made all the other components appealable. *Id.* at 1414–15. Although the aggregate was reapplied in the revised repayment demand, the court held that its components were discrete, so only the revisited components themselves were appealable, not the other components and not the aggregate item itself. *Id.* at 1421–22. In *Anaheim*, when HHS reopened the cost report, it did so to make the aggregate item inapplicable to one reclassified cost item. 130 F.3d at 851. The court held that under such circumstances, the PRRB did not then have jurisdiction to hear a challenge to components of the aggregate because its components were not revisited in the revised demand. *Id.* at 852–53.

In sum, the most stringent interpretation of the regulation and the precedent cases dictates that appeal rights attach to any item that was reconsidered and adjusted in a revised repayment demand as long as the item was not incidentally reapplied solely to effectuate the adjustment of another, distinct item.

Here, there is no dispute that HHS reopened Zia's repayment demand to "complete[] a *revised* review of the hospice cap amount for [FY '06]." (R. in 09-1929 at 97 (emphasis in original).) The only item reconsidered, revisited, or reviewed was Zia's repayment-demand amount pursuant to the hospice cap. Under both *Edgewater* and *HCA*, therefore, appeal rights attach to the determination of the hospice-cap amount. HHS reopened the

11

demand to figure Zia's hospice-cap-repayment amount over again. Unlike the situation in *Anaheim*—where the disputed item was only incidentally reapplied—here, the disputed item was the sole subject of the revised demand; nothing else happened in the repayment demand besides the recalculation of the Zia's repayment-demand amount according to the hospice cap regulation. Zia's appeal rights with respect to the repayment demand, therefore, attach to HHS's "review of the hospice cap amount for FY ['06]."

To the extent that the Secretary may be arguing that PRRB case no. 09-0220 represents the initial $1,586,718 and PRRB case no. 09-1929 represents only the additional $38,425, the Court rejects such argument. Appeal rights not determined by the final dollar amount reached after the reconsideration is complete; rather, appeal rights are determined by the subject of the reconsideration itself. Here, HHS did not reconsider $38,425—or any dollar amount for that matter—HHS reconsidered Zia's liability under the hospice cap. The $38,425 difference is the *result* of that reconsideration; it is not the *subject* of the reconsideration. Regarding the repayment under the hospice cap regulation, therefore, PRRB case no. 09-1929 is comprehensive of PRRB case no. 09-0220. The Court, therefore, will reserve judgment on of all the substantive issues related to the appeal of PRRB Case No. 09-1929 and its entire repayment demand of $1,625,142 and decide them in the context of CV 09-1108.

**IT IS THEREFORE ORDERED** that both parties' Motions for Summary Judgment (Docs. 48, 51) in CV 09-0055 are **DENIED**.

**IT IS FURTHER ORDERED** that the *Order of Stay* (CV 09-0055, Doc. 82) regarding the repayment demands for Fiscal Years 2006, 2007, and 2008 **REMAINS IN EFFECT** and, therefore, **APPLIES TO CV 09-1108**.[9]

**IT IS SO ORDERED.**

_____
**THE HONORABLE CARMEN E. GARZA**
**UNITED STATES MAGISTRATE JUDGE**

---

[9] By this order, the Court is <u>not</u> ruling on the pending *Motion to Amend or Alter* (CV 09-0055, Doc. 87), which requests clarification or amendment of the *Order of Stay*. Rather, this order is intended to make clear that, despite the disposition of CV 09-0055 which is decided in this order, the stay remains in effect for CV 09-1108. The Court will address the pending *Motion to Amend or Alter* after the parties have had the opportunity to fully brief it.