IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ZIA HOSPICE, INC.,

    Plaintiff,

v.

KATHLEEN SEBELIUS,
Secretary of the United States
Department of Health and Human Services,

    Defendant.

CV 09-0055 CG/LFG
CV 09-1108 CG/ACT

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion to Amend or Alter Judgment, or in the Alternative, Motion for Relief and Supporting Brief* (Doc. 87) ("*Motion*"). The Court has considered the *Motion*, as well as *Zia's Response Brief and Objection to Defendant's Motion to Amend or Alter the Judgment or, in the Alternative, Motion for Relief* (Doc. 91) and its two supplements (Docs. 92, 93) (collectively "*Response*") and the relevant law. The Court **FINDS** that pursuant to Federal Rule of Civil Procedure 59(e) the *Motion* is untimely and, even if it were timely, it would fail on its merits; that pursuant to Federal Rule of Civil Procedure 60(b), the *Motion* is not well-taken and fails on its merits; and that, even after considering the Partial Settlement and Extended Repayment Plan Agreement ("PSERPA"), the Stay is warranted. The Court, therefore, will **DENY** the *Motion*.

## BACKGROUND

In the two underlying cases before the Court, Plaintiff Zia has appealed two administrative decisions. In each, Zia challenges the validity of 42 C.F.R. § 418.309(b)(1),

1

the "Hospice Cap Regulation," on the grounds that it does not comply with its parent statute 42 U.S.C. § 4395f(i)(2)(C).[1] Defendant Sebelius, Secretary of the Department of Health and Human Services (HHS) raises numerous procedural issues and argues that the regulation is valid.

Zia provides hospice services for persons covered by Medicare. *Zia's Motion for Summary Judgment* (Doc. 49) ("*Zia's MSJ*") at 2. Medicare is a federally funded health insurance program for the aged and disabled. 42 U.S.C. §§ 1935–1935hhh. Zia contracts with Medicare, which is run by HHS, and receives reimbursements for providing hospice services to Medicare beneficiaries. *See* 42 U.S.C. § 1395g. Those reimbursements, however, are subject to a complex web of rules. *See* 42 U.S.C. § 1395f; 42 C.F.R. §§ 405–426. The issue in the underlying cases, *Petition for Judicial Review of Agency Decision* (Doc. 1 in CV 09-0055) ("*Complaint* in CV 09-0055") at 2 and *Complaint* (Doc. 1 in CV 09-1108) ("*Complaint* in CV 09-1108") at 3, is the Hospice Cap Regulation, which prescribes a method for computing the maximum amount that a hospice provider may be reimbursed, 42 C.F.R. § 418.309(b)(1). The cap, however, is often calculated after the hospice provider has received some reimbursement, so the cap—when finally applied—determines the amount that the hospice must repay to HHS. *See* 42 C.F.R. § 405.371 (procedures for addressing overpayments to providers).

To request reimbursements, Zia submits annual cost reports to HHS (via a fiscal intermediary, *see* 42 C.F.R. §§ 405.1803–1877), and HHS then issues Notices of Program Reimbursements ("NPR") detailing the calculations of the reimbursements and any

[1] Medicare Act § 1814(i)(2)(C).

repayment demands for overpayments. *See id.* The NPRs can be appealed to the Provider Reimbursement Review Board (PRRB), then to the Administrator, and finally to the federal courts. *Id.*; 42 U.S.C. § 1395oo.

On December 5, 2007, HHS sent its initial repayment demand for FY 2006 to Zia. *Complaint* in CV 09-0055 (Doc. 1-3) at 10. Zia requested an Extended Repayment Plan ("ERP") for the initial FY 2006 demand on December 15, 2007. *Zia's MSJ*, Ex. A (Doc. 49-2) at 2, ¶ 11. HHS denied the requested ERP for 60 months but granted a 36-month ERP on April 4, 2009. *Zia's MSJ* (Doc. 49) at 9, ¶ 23. On April 28, 2009, Zia moved this Court for a preliminary injunction against the repayment demand pending the outcome of the underlying litigation. *Motion for Preliminary Injunction* (Doc. 21). The Court denied the preliminary injunction on May 6, 2009 because, at that time, Zia was not able to show a substantial likelihood of success on the merits of its underlying claim. *Order* (Doc. 29) at 3. Zia then appealed to the Tenth Circuit on June 4, 2009. *Notice of Appeal* (Doc. 34). This appeal apparently triggered further repayment negotiations between Zia and HHS, and on January 7, 2010, Zia and HHS entered into the PSERPA, and in exchange, Zia voluntarily dismissed its appeal. *Response* (Doc. 91) at 4; *see Motion* (Doc. 87) at 2. On February 16, 2010, however, HHS issued a new repayment demand, this time for FY 2008. *Opposed Motion to Stay*, Ex. A (Doc. 81-1). HHS, on March 24, 2010, informed Zia that the entire repayment demand amount of $1,195,979.17 was due immediately and that HHS would begin to withhold all Medicare reimbursements until the balance was met. *Opposed Motion to Stay*, Ex. B (Doc. 81-2). On March 29, 2010, Zia moved for a stay of all repayment demands. *Opposed Motion to Stay* (Doc. 81); *Tr. of Mot. Hr'g* (Doc. 89) at 43. Zia explained that the immediate FY 2008 repayment demand would

cause it to have to close its doors and to cease serving its terminally ill patients that very week.  *Tr. of Mot. Hr'g* (Doc. 89) at 48; *Response* (Doc. 91) at 6.  On March 30, 2010, the Court heard oral arguments on the motion to stay.  *Clerk's Minutes* (Doc. 86).  Since the initial injunction was denied, overwhelming authority had developed that supported Zia's underlying position, which evidenced a substantial likelihood of success on the merits.  *Order of Stay* (Doc. 85) at 1.  The Court, thus, granted the motion, staying all repayment demands that were based on the challenged regulation for any past, present, or future accounting years.  *Clerk's Minutes* (Doc. 86); *Order of Stay* (Doc. 85).  Nearly two months later, on May 26, 2010, HHS filed the instant *Motion*, which essentially asks the Court to alter, amend, or lift the stay.  *Motion* (Doc. 87) at 1–2.

## **LEGAL ANALYSIS**

### **Rule 59(e)**

First, HHS requests relief pursuant to Rule 59(e).  *Motion* (Doc. 87) at 5–8.  Rule 59(e) motions, however, "must be filed no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  The District Court is without jurisdiction to hear untimely Rule 59(e) motions.  *E.g., Brock v. Citizens Bank of Clovis*, 841 F.2d, 344, 348 (10th Cir. 1988).  Because here, the Stay was issued on March 30, 2010, a motion under Rule 59(e) would have been due by April 27, 2010, but HHS filed the instant *Motion* on May 26, 2010.  The *Motion* is, therefore, untimely, and the Court does not have jurisdiction to hear it.

Moreover, even if the *Motion* had been timely, it would have failed on its merits.  Relief under Rule 59(e) is appropriate only:  "[1] where the court has misapprehended the facts, a party's position, or the controlling law," *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (internal quotation marks omitted), "[2] to

correct manifest errors of law[,] or [3] to present newly discovered evidence," *Phelps v. Hamilton*, 122 F.3d 1309, 1324 (10th Cir. 1997).  Relief is not appropriate to "advance arguments that could have been raised in prior briefing" but were not.  *Grynberg v. Total S.A.*, 538 F.3d 1336, 1354 (10th Cir. 2008) (internal quotation marks omitted).

Here, HHS asserts that relief is warranted because of a "clear error of law" and to "prevent manifest injustice."  *Motion* (Doc. 87) at 5.  HHS' theory is that, at the time of the Stay, the Court lacked jurisdiction to stay the FY 2008 repayment demand because Zia had not yet exhausted its administrative remedies with respect to the FY 2008 repayment demand.  *Id.* at 7–8.  This argument could have been raised in prior briefing but was not, and HHS failed to explain why it waited.  Relief under Rule 59(e) is, therefore, inappropriate.  Lastly, the argument is now moot because on June 15, 2010, Zia exhausted its administrative remedies with respect to the FY 2008 repayment demand, *Second Supplement to Response*, Ex. 1 (Doc. 93-1) at 1–2, and on August 4, 2010, Zia amended its Complaint to include the agency's final decision on the FY 2008 repayment demand, *First Amended Complaint* (Doc. 97 in CV 09-0055) (Doc. 25 in CV 09-1108).  The Court will deny the *Motion* under Rule 59(e) because it is untimely, because it raises an argument that could have been raised in prior briefing, and because it is moot.

## Rule 60(b)(1)

HHS asserts that it "inadvertently omitted introducing the [PSERPA] for the Court's consideration . . . . [and that such] oversight . . . would constitute manifest injustice if the Court declines to afford [it] due consideration."  *Motion* (Doc. 87) at 3–4. Additionally, HHS claims that its "oversight constitutes an excusable litigation mistake from which [Zia] should not be allowed to profit."  *Id.* at 4.  Zia responds that the PSERPA was a "non-issue" when

5

the *Opposed Motion to Stay* was being briefed and argued, that HHS had "ample opportunity" to raise it, and that HHS' "suggestion that [its own failure] is the sort of 'mistake' contemplated by Rule 60(b)(1) is disingenuous, at best." *Response* (Doc. 91) at 8.

Rule 60(b)(1) allows for relief, among other circumstances, "(1) when a party has made an excusable litigation mistake or an attorney in the litigation has acted without authority; or (2) when the judge has made a substantive mistake of law or fact in the final judgment or order." *Utah v. United States*, 528 F.3d 712, 722–23 (10th Cir. 2008) (internal quotation marks and brackets omitted).  Whether a litigation mistake is, in fact, excusable "is at bottom an equitable [determination], taking account of all relevant circumstances surrounding the party's omission." *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005) (internal quotation marks omitted).  In making such determination, a court should consider: "[1] the danger of prejudice to the opposing party, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, [4] whether the movant acted in good faith[, 5] whether the moving party's underlying claim is meritorious[, and 6] whether the mistake was a single unintentional incident (as opposed to a pattern of deliberate dilatoriness and delay)[] and whether the attorney attempted to correct his action promptly after discovering the mistake." *Id.* at 856–57 (brackets, internal quotation marks, and citations omitted).  "Fault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable." *Id.* at 856 (brackets omitted).  Ultimately, relief under Rule 60(b) is an "extraordinary procedure which seeks to strike a delicate balance between two countervailing impulses:  the desire to preserve the

finality of judgments and the incessant command of the court's conscience that justice be done in light of *all* the facts." *Id.* (emphasis in original) (internal quotation marks omitted).

In this case, the factors weigh in favor of denying HHS' *Motion*. First, the danger of prejudice to Zia is great because if the stay is lifted and the demand for immediate repayment for FY 2008 is triggered, Zia reports that it will have to close its doors and cease serving its terminally ill patients. Second, the length of delay was about two months, which at first blush, may not seem unreasonable, but the delay has necessitated the instant *Motion*, its briefing, and the Court's resources in addressing it. Third, HHS explains that its two-month delay in raising the PSERPA in opposition to the stay was due to its own "inadvertence" and "oversight." Zia claims, however—and HHS does not dispute—that counsel for HHS was aware of the PSERPA at the time of the Stay because he had participated in its negotiation. *Response* (Doc. 91) at 4. It appears, therefore, that HHS' oversight was in *raising* the PSERPA, rather than in being aware of it. Fourth, the Court finds that HHS has not acted in good faith with respect to the *Motion* because its allegation of misrepresentation has no evidentiary support, as further explained *infra*. Fifth, as indicated in the *Order of Stay* (Doc. 85), there is overwhelming authority across numerous jurisdictions—including this district—that the challenged regulation is invalid and that HHS' defenses, therefore, are unlikely meritorious. Sixth, there is no evidence of any pattern of delay in this case, and HHS' "oversight" appears to be an isolated event. The most heavily weighted factor, fault in the delay, supports denial of the motion because the reason for the delay appears to be that HHS did not decide that it wanted to raise the PSERPA as a defense to the Stay until now, which is not the kind of mistake envisioned by the Rule. Moreover, four of the other five factors weigh in Zia's favor. The Court FINDS that under

the circumstances, HHS' delay is not excusable, and HHS therefore, is not entitled to relief under Rule 60(b)(1).

### Rule 60(b)(3)

HHS next invokes Rule 60(b)(3), which provides for relief where there has been "fraud . . . , misrepresentation, or misconduct by an opposing party." *Motion* (Doc. 87) at 4. Essentially, HHS asserts that Zia's failure to specifically mention the PSERPA when it moved for the Stay constitutes fraud, misrepresentation, or misconduct, thereby entitling HHS to relief under Rule 60(b)(3). *See id.*

> Zia failed to disclose the existence of the [PSERPA], which actually addresses not only FYs 2006, but also FY 2007 as well. Plaintiff intentionally filed its expedited motion seeking a stay of its obligation under the parties' January 7, 2010 [PSERPA]. This belief is compounded by the fact that Plaintiff failed to mention the agreement during the hearing on March 30, 2010.

*Id.* Zia vigorously defends against HHS' allegation that it misrepresented the facts related to it *Motion to Stay* (Doc. 81). First, Zia points out that HHS characterizes its own failure to raise the PSERPA as "inadvertence" but, with respect to Zia, as "misrepresentation," and this disparity "is an unconscionable attempt . . . to cast Zia in a false, negative light before this Court." *Response* (Doc. 91) at 9. Second, Zia highlights four instances in its written submissions to the Court that refer to Zia's participation in a repayment plan with HHS. *Id.* at 10. Third, Zia explains that even if the PSERPA had been raised, it would have been of no consequence because the PSERPA did "not preclude Zia from seeking subsequent relief in the form a Stay . . . ." *Id.* at 11. Lastly, Zia reminds the Court that counsel for HHS "reviewed the proposed Order of Stay, did not question the stay of the contractual demands[, which related to the PSERPA,] and approved the form of the Order of Stay on

behalf of Defendant[]." *Id.* at 12.  Zia sees HHS' accusations as "disingenuous and not made in good faith."  *Id.* at 13.

Rule 60(b)(3) provides relief from an order where there has been "fraud . . ., misrepresentation, or misconduct by an opposing party."[2]  The movant bears the burden of establishing such misrepresentation by clear and convincing evidence.  *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1290 (10th Cir. 2005).  In addition to showing the misrepresentation, "the challenged behavior must *substantially* have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed with trial."  *Id.* (emphasis in original) (internal quotation marks omitted).  Relief under subsection (b)(3) "is aimed at judgments which were unfairly obtained, not those which are factually incorrect."  *Id.* (internal quotation marks omitted).

For example, in *Zurich*, the plaintiff requested relief under Rule 60(b)(3) because the defendant had refused to provide certain discovery, and the plaintiff asserted that such refusal "required an inference that the documents would prove [a dispositive issue in the case]."  *Id.* at 1286.  The requested discovery, however, had previously been exchanged between the parties themselves.  *Id.*  The Tenth Circuit agreed with the District Court that relief under Rule 60(b)(3) was not warranted because "[a]llegations of discovery abuses of this kind do not rise to the level of fraud between the parties.  This is especially true

---

[2] Rule 60 also provides relief where there has been a fraud on the court.  Such relief is currently found in Rule 60(d)(3) but, prior to 2007, was found in the savings clause of Rule 60(b).  Because fraud by *an opposing party* and fraud *on the court* at times may overlap and because recently both were addressed by Rule 60(b), the two can be confusing.  Each, however, is distinct, and the standard for showing fraud by an opposing party is lower than for showing fraud on the court.  *Zurich*, 426 F.3d at 1290–91.  Here, HHS alleges misrepresentation by Zia rather than a fraud on the court.  Thus, the lower standard is applicable.

where . . . the offending party could reasonably assume the complaining party was aware of the issue." *Id.* at 1292.

Here, HHS has fallen woefully short of its burden to establish either that Zia made any misrepresentations or that such misrepresentations substantially interfered with HHS' ability to fully and fairly prepare for the *Opposed Motion to Stay*. HHS has in fact, presented no evidence whatsoever satisfying either the misrepresentation prong or the prejudice prong. Even if everything that HHS asserts were true, its claim would still fail. Even if HHS could establish that Zia intentionally hid the PSERPA when it moved for the Stay, such behavior would establish neither misrepresentation nor prejudice because Zia was under no obligation to raise it and because, similar to *Zurich*, HHS was itself well-aware of the PSERPA. HHS failed to raise the PSERPA itself and now regrets its "oversight," which does not constitute fraud, misrepresentation, or misconduct by Zia. This claim, therefore, fails.

Moreover, allegations of fraud, misrepresentation, and misconduct are serious, and like all representations to the Court, they must have evidentiary support, as required by Fed. R. Civ. P. 11(b). HHS has completely failed to provide any factual basis for its allegations of misrepresentation.

### Rule 60(b)(6)

HHS' final claim is that relief from the Stay is warranted under Rule 60(b)(6) because of Zia's misrepresentations and because the Court was without jurisdiction to stay the repayment demand for FY 2008, which allowed Zia to "unjustly benefit." *Motion* (Doc. 87) at 4–8. Zia responds that HHS' "excuses simply do not rise to [the] level" required by the Rule. *Response* (Doc. 91) at 13.

Relief under subsection (6) "is even more difficult to attain [than under the other subsections] and is appropriate only when it offends justice to deny such relief." *Zurich*, 426 F.3d at 1293 (internal quotation marks omitted). Additionally, Rule 60(b)'s categories are mutually exclusive [because t]he clear import of the language of clause (b)(6) is that the clause is restricted to reasons other than those enumerated in the previous five clauses." *Id.* (internal quotation marks and citation omitted). In other words, a movant under Rule 60(b) "cannot simply throw in subsection (6) without any new arguments and expect to obtain [relief]." *Id.*

In the motion at bar, HHS' argument regarding misrepresentation is not cognizable under subsection (6) because it is exclusively available under subsection (3). Next, HHS' jurisdictional argument is also without merit because it is moot, as explained above. *See supra* pp. 2–3. HHS, therefore, has failed to show that it would offend justice to deny the *Motion*.

**IT IS THEREFORE ORDERED** that Defendant's *Motion* (Doc. 87) be **DENIED**.

**IT IS SO ORDERED.**

_____
**THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent**